Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1538 | **DATE** | 11/18/2003 |
| **CASE TITLE** | Josephine Henderson vs. Meritage Mortgage Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on ____ set for ____ at _____.

(5) ■ Status hearing set for 12/9/03 at 9:45 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

**NOV 1 9 2003**
date docketed

docketing deputy initials

RO | courtroom deputy's initials

**Document Number**

21

Date/time received in central Clerk's Office

mailing deputy initials

**DOCKETED**

NOV 1 9 2003

| | | |
|---|---|---|
| Estate of JOSEPHINE HENDERSON, | ) | |
| brought by Independent Administrator, | ) | |
| Frank Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  03 C 1538 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| MERITAGE MORTGAGE CORP. | ) | |
| and MDR MORTGAGE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Estate of Josephine Henderson ("the Estate") filed suit against Meritage Mortgage Corporation ("Meritage") and MDR Mortgage Corporation ("MDR") claiming that the fees assessed for a home-equity loan made to Henderson violated federal and state law. Presently before this Court is Defendants' motion to dismiss the complaint. (R. 12-1, Defs.' Mot. to Dismiss.) Defendants' motion raises two arguments: (1) Plaintiff's complaint fails to state a claim upon which relief can be granted because all claims are barred by the applicable statutes of limitations; and (2) even if the state-law claims are not barred, the Court lacks subject-matter jurisdiction over them. For the reasons provided below, we deny Defendants' motion to dismiss in its entirety.

## RELEVANT FACTS

Josephine Henderson died intestate on July 31, 2001. (R. 1, Compl. ¶ 2.) Although vascular disease ultimately caused Henderson's death, other significant conditions noted on her



death certificate included dementia. (*Id.*, Ex. A, Certificate of Death.) Her son, Frank Johnson, the independent administrator of the Estate, brings this action on her behalf.

From at least September 1998 until her death in 2001, Henderson "suffered from advanced Alzheimer's disease, dementia and other mental disorders." (*Id.*, Compl. ¶ 2.) During this time, Johnson lived with Henderson and observed her on a daily basis. (*Id.*, Ex. C, Johnson Aff. ¶ 6.) In his sworn affidavit, Johnson noted that by 1998, Henderson could not read, do simple arithmetic, consistently recognize her own son, feed or dress herself, remember the date or use the phone to make calls. (*Id.*, Ex. C, Johnson Aff. ¶¶ 7-8, 11-13.) Johnson had to warn Henderson about interacting with sales people. (*Id.*, Ex. C, Johnson Aff. ¶ 13.) He also noted that Henderson "was under the delusion that she had no bills, including water, gas or phone bills, and was incapable of paying them." (*Id.*, Ex. C, Johnson Aff. ¶ 10.) "She put all correspondence and invoices, unopened, in a dining room drawer." (*Id.*)

MDR is a mortgage brokerage. Sometime in September 1998, an MDR agent approached Henderson and encouraged her to obtain a home-equity loan to finance home improvements. (*Id.*, Compl. ¶ 6.) On October 2, 1998, MDR secured through Meritage, a mortgage lender, a $40,200 home-equity loan for Henderson. (*Id.* ¶ 8.) Henderson, nearly 83 years old, agreed to make 330 monthly payments of $434.96. (*Id.* ¶¶ 2, 8.) At the time of the loan, Henderson owned her home outright and she lived on a monthly income of $946 from Social Security benefits and a widow's pension. (*Id.* ¶¶ 2, 6.) Thus, the loan's payment schedule would consume 46% of her monthly income until she was over 110 years old. (*Id.* ¶ 8.)

The home improvements started sometime in 1998 or early 1999, but were never completed. (*Id.*, Ex. C, Johnson Aff. ¶ 17.) On September 23, 1999, Resource Bancshares

2

Mortgage Group, Inc., a loan servicing group to whom Meritage transferred the loan, filed a foreclosure complaint against Henderson. (*Id.*, Compl. ¶¶ 30-31.) Johnson contends that neither he nor Henderson received notice of the foreclosure until Johnson was served with eviction papers on April 9, 2002, almost one year after Henderson's death. (*Id.* ¶ 32.) Johnson further asserts that he had no knowledge of the home-equity loan until he received notice of the eviction. (*Id.*, Ex. C, Johnson Aff. ¶ 19.) In August 2002 Johnson searched through his mother's things and discovered materials concerning the home-equity loan. (*Id.*, Compl. ¶ 34.) Johnson then enlisted the help of an attorney to obtain copies of the closing papers from Meritage. (*Id.*)

Johnson responded to the foreclosure proceedings in the Circuit Court of Cook County by filing a countersuit alleging that neither he nor his mother had notice of the mortgage, foreclosure or sale. (*Id.*, Compl. ¶ 33.) On November 21, 2002, his claim was dismissed without prejudice because it was brought by the next of kin rather than by the Estate. (*Id.* ¶ 35.) Johnson then applied to become the independent administrator of the Estate, which was granted on January 9, 2003. (*Id.*) On February 28, 2003, he filed the present complaint.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). This Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). This Court may also review any documents referred to in the complaint. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). We will grant a motion to dismiss only if it appears beyond doubt that the

3

plaintiff can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993).

## ANALYSIS

The Estate alleges that the fees charged to structure the mortgage, as well as the mortgage itself, were illegal and unconscionable. The Estate seeks relief under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Truth in Lending Act ("TILA"), Pub. L. No. 90-321, 82 Stat. 146 (codified in scattered sections of 15 U.S.C.), the Home Ownership and Equity Protection Act ("HOEPA"), Pub. L. 103-325, 108 Stat. 2190 (codified in scattered sections of 15 U.S.C.), the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, the Equal Credit Opportunity Act ("EOCA"), 15 U.S.C. §§ 1691-1691f and section 1981 of the Civil Rights Act, 42 U.S.C. § 1981. The complaint also includes state-law claims of breach of fiduciary duty, inducing breach of fiduciary duty, unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1-505/12.

Defendants assert that the Estate's claims are barred by the applicable statutes of limitations. Plaintiff's RESPA, TILA and HOEPA claims have one-year statutes of limitations. 12 U.S.C. § 2614; 15 U.S.C. § 1640(e). Plaintiff's ECOA, FHA, and section 1981 claims have two-year statutes of limitations. 15 U.S.C. § 1691e(f); 42 U.S.C. § 3613(a)(1)(A); *Smith v. City of Chi. Heights*, 951 F.2d 834, 839 (7th Cir. 1992) (stating that the statute of limitations for section 1981 claims is the two-year statute of limitations for personal injuries in Illinois). Plaintiff's ICFA claim has a three-year statute of limitations. 815 Ill. Comp. Stat. 505/10a(e). Defendants assert that all of these statutes of limitations started to run on October 2, 1998, the

4

day that Henderson entered into the mortgage agreement.[1] *See Thomas v. Ocwen Fed. Bank FSB*, No. 01-C-4249, 2002 WL 99737, at *2 (N.D. Ill. Jan. 25, 2002) (stating that the closing day represents "the day upon which claims under RESPA and disclosure claims under TILA typically accrue").

The Estate responds that the statutes of limitations have not expired because, under the federal discovery rule, the claims did not accrue on the loan's closing date. The Estate also argues that, even if the statutes of limitations have expired, this Court should equitably toll them. The federal discovery rule, on the one hand, provides that a claim does not accrue, and the statute of limitations does not begin to run, until (1) a "party performs the alleged unlawful act" and (2) "the party bringing a claim discovers an injury resulting from this unlawful act." *Doe v. Paukstat* 863 F. Supp. 884, 889 (E.D. Wis. 1994) (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992)). The equitable tolling doctrine, on the other hand, "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Under the equitable tolling doctrine, "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.*

Turning to the question of when Plaintiff's claims accrued, it is undisputed that the alleged unlawful act occurred when the loan was consummated, but the parties dispute when

---

[1] Defendants also assert that Plaintiff's common-law claims are barred by the federal statutes of limitations because they duplicate the harms addressed in the federal claims.

5

Henderson (or her Estate) discovered the resulting injury. Plaintiff alleges that because Henderson suffered from advanced Alzheimer's disease when the loan was consummated, she lacked the mental capacity to discover her injury, and therefore invokes the federal discovery rule to toll the statutes of limitations. Defendants contend that "mental illness, even where rising to the level of insanity, [will not] delay the statute of limitations from running." *Ebrahimi v. E.F. Hutton & Co., Inc.*, 852 F.2d 516, 521 (10th Cir. 1988). The Tenth Circuit in *Ebrahimi* relied in part on a passage in *Crawford v. United States*, 796 F.2d 924, 927 (7th Cir. 1986), stating that "[i]f the running of the statute of limitations depended on what the particular plaintiff actually knew given his mental or other incapacities, the discovery rule would swallow most of the provisions related to tolling, at least for disabilities that affected cognition and were in existence at the time of the accident." However, the next sentence in *Crawford* states that the Court did not determine "when if ever mental incapacity tolls the administrative statute of limitations." *Crawford*, 796 F.2d at 927.

The Seventh Circuit later addressed this very question in *Barnhart v. United States*, 884 F.2d 295 (7th Cir. 1989).[2] Although the court once again did not affirmatively determine when mental disorders toll statute of limitations, it provided significant guidance on how the question should be answered. In *Barnhart*, the Seventh Circuit considered whether "an adult with no legal guardian" could rely on the discovery rule to toll the statute of limitations if the adult's mental state "rendered him incapable of 'discovering' the cause of his injury." *Barnhart*, 884 F.2d at

---

[2] While both *Crawford* and *Barnhart* addressed the application of the discovery rule to the administrative statute of limitations under the Federal Tort Claims Act, the effect of mental disorders on the application of the discovery rule applies generally to all statutes of limitations. *See, e.g., Brown v. City of Chi.*, No. 00-C-3514, 2001 WL 1002484, at *4 (N.D. Ill. Aug. 30, 2001); *Dallman v. Saturn of Chi.*, No. 95-C-395, 1996 WL 41240, at *2 (N.D. Ill. Jan. 31, 1996).

299. The court ultimately concluded that the plaintiff's mental disorder did not preclude him from discovering his injury because he had filed a timely action against a different defendant and because his mental disorder only eroded or impaired his "desire to proceed with a recognized cause of action." *Id.* at 299-300. Finally, the court stated that application of the discovery rule in this context should "focus on awareness or ability to comprehend." *Id.* at 299. The court noted that it was not "foreclos[ing] the possibility that a mental disability preventing a plaintiff from discovering or understanding the cause of an injury (or rendering him or her entirely incapable of bringing a legal action) might toll the statute of limitations in similar cases." *Id.* at 299-300; *see also Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) ("[T]he traditional rule that mental illness tolls a statute of limitations [applies] only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.") (emphasis in original).

Plaintiff alleges that Henderson could not read, do simple arithmetic, consistently recognize her own son, feed or dress herself, remember the date or use the phone to make calls. Viewing these facts and all reasonable inferences in the light most favorable to Plaintiff, we conclude that Henderson lacked the ability to comprehend her injury and, due to advanced Alzheimer's Disease, to act upon her legal rights. By focusing on Henderson's "awareness or ability to comprehend," as instructed by *Barnhart*, rather than on what Henderson actually knew, as cautioned against in *Crawford*, we conclude that Plaintiff's claim accrued, at the earliest, on July 31, 2001, when Henderson died and her claims passed to her Estate. Once her claims passed to her Estate, Henderson's mental disorder was no longer relevant.

We must now determine when the Estate discovered Henderson's claims. The complaint is silent about who was responsible for administering the Estate prior to Johnson's appointment as independent administrator. Drawing all reasonable inferences in favor of the Estate, we assume that the Estate discovered Henderson's claims when Johnson discovered them. There are several dates when Johnson could have discovered Henderson's claims: when the loan closed (October 2, 1998); when construction started on Henderson's home (early 1999); when Johnson learned about the home-equity loan (April 9, 2002); or when Johnson received the loan documents (August 2002). Again, viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, we conclude, at this stage of the proceedings, that Johnson was unaware of Henderson's injury until April 9, 2002.[3] Thus, we conclude for the purposes of the motion to dismiss that the statutes of limitations did not begin to accrue until that date. The present action was filed on February 28, 2003, well within all applicable statutes of limitations, so Plaintiff's claims are not time-barred. Of course, discovery in this case may reveal that the Estate discovered Henderson's injury prior to April 9, 2002, in which case Defendants are free to renew this argument by filing an appropriate motion for summary judgment.

The remaining issues before this Court—whether the statute of limitations should be equitably tolled, whether the shorter federal statutes of limitations should apply to Plaintiff's state-law claims and whether this Court has subject-matter jurisdiction over Plaintiff's state-law

---

[3] Alternatively, if there was no administrator appointed for Henderson's Estate, the claims may have accrued when Johnson was appointed independent administrator. *See Clifford v. United States*, 738 F.2d 977, 980 (8th Cir. 1984) (holding that the statute of limitations does not start to run until an individual with knowledge of the injury also has the legal right or duty to sue).

8

claims—need not be addressed as we have already found that Plaintiff's claims are not barred by the applicable statutes of limitations.

## CONCLUSION

For the reasons stated above, Defendants Meritage Mortgage Corporation and MDR Mortgage Corporation's motion to dismiss is denied in its entirety. (R. 12-1.) This case is hereby set for a status hearing on December 9, 2003 at 9:45 am.

**ENTERED:**

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 18, 2003**

9